U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 6, 2009**

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES EUGENE RIGGERT, | § | CASE NO. 08-30331-SGJ-7 |
| D E B T O R. | § | |
| | § | |
| THE CADLE COMPANY, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 08-3165 |
| | § | |
| JAMES EUGENE RIGGERT, | § | |
| DEFENDANT. | § | |

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

CAME ON FOR CONSIDERATION by this Court the Plaintiff's Motion for Leave to File Amended Complaint ("Motion for Leave") filed by The Cadle Company ("Cadle" or "Plaintiff").

### PROCEDURAL POSTURE

1. The facts are that James Eugene Riggert (the "Debtor") filed a voluntary Chapter 7 petition on January 31, 2008.

1

2.    On February 26, 2008, the Section 341 first meeting of creditors in the case was held and concluded [PACER doc. entry on March 3, 2008].[1]

3.    The original deadline for parties to file complaints objecting to discharge or dischargeability in the case was April 28, 2008 [doc. no. 4].  Fed. R. Bankr. P. 4004(a) and 4007(c).

4.    On March 27, 2008, Cadle, a judgment creditor of the Debtor, who has been engaged in efforts to collect its claim against the Debtor for many years,[2] filed a motion to extend time to file complaints objecting to discharge, citing the need to depose the nondebtor spouse of the Debtor, so Cadle could investigate "a potential fraudulent transfer between the spouses which has resulted in nonexempt property being declared as exempt" [doc. no. 21].

5.    The Debtor objected, disputing that Cadle needed more time, arguing that Cadle knew of the particulars of the

---

[1] All references to the PACER "doc." herein refer to the docket maintained in the Debtor's bankruptcy case, No. 08-30331-SGJ-7, except where the reference is to "Adv. Pro. doc.," in which case the reference is to the docket maintained in adversary proceeding No. 08-3165.

[2] Cadle purports to be an assignee of an Agreed Judgment entered February 12, 1988 in an action styled *Mbank Lincoln, N.A. v. James Riggert*.  Cadle was assigned the judgment in 1992 and has apparently been attempting to collect upon the judgment since at least 1998.  *See* ¶ 4 of Cadle's proposed First Amended Complaint to Object to Discharge, attached as Exhibit A to the Motion for Leave.

transaction at issue (such transaction apparently being a June 2007 refinancing of the Debtor's homestead and related transfers and agreements). The Debtor asserted that Cadle knew about the transaction (hereinafter, the "2007 Homestead Refinancing") because of, among other things, a 99-page deposition Cadle took of the Debtor prepetition (in July 2007; just one month after the transaction); prepetition document production; disclosure of such transaction in the Debtor's Schedules and Statement of Financial Affairs; and Cadle's attendance at the Section 341 meeting [doc. no. 28].

6. The court granted Cadle a 60-day extension of time to file a complaint objecting to discharge/dischargeability, through June 30, 2008, rather than the 90-day extension Cadle sought [doc. no. 30].

7. On June 19, 2008, Cadle filed an unusually short (3-page) Complaint to Object to Discharge ("Complaint"). Cadle asserted therein that the Debtor and his spouse, within one year of the Debtor's bankruptcy filing, refinanced a jointly owned homestead, extracting approximately $65,000 of cash equity out in the process, then segregated and treated the cash as the wife's sole and separate property, then entered into an agreement and note, pursuant to which the wife would owe the approximately $65,000 back to the Debtor upon the further refinancing or sale of the homestead. Counts 1 through 3 of the Complaint allege

3

that these acts were undertaken with intent to hinder, delay and defraud creditors, as was the failure to reveal the existence of the transfer, the agreement, and the claim against the wife in the Debtor's schedules and statement of financial affairs.  All of this, it is alleged, constitutes grounds for denial of discharge, pursuant to Section 727(a)(2), (a)(3), (a)(4), or (a)(5) of the Bankruptcy Code.  Count 4 of the Complaint is a "catch all," alleging that the foregoing acts, and "such other acts and omissions under" Section 727(a)(2), (a)(3), (a)(4), or (a)(5) that occurred on or within one year of the date of the filing, are grounds for denial of discharge under Section 727(a)(7).  Count 5 of the Complaint is a request for attorney's fees.

8.   The Debtor answered the Complaint on July 25, 2008, admitting to the 2007 Homestead Refinancing transactions in pertinent part, but denying that the transactions had ever been concealed (asserting that Cadle—again, having engaged in prepetition discovery—knew about the transactions virtually instantaneously with their occurrence), and denying the transactions were undertaken with intent to hinder, delay, or defraud creditors.

9.   Pursuant to the Scheduling Orders in this adversary proceeding, the Complaint is set for trial docket call on

4

February 9, 2009.[3]

10.  On October 29, 2008 (more than **six** months after the original deadline for objections to discharge and more than **four** months after the court-extended deadline), Cadle filed its Motion for Leave, seeking leave to file a First Amended Complaint "to add certain facts which provides [sic] a more definite statement of the Plaintiff's causes of action."  Motion for Leave, ¶ 4. Cadle requested and obtained a hearing on the Motion for Leave on December 3, 2008.

11.  The First Amended Complaint, which is attached to the Motion for Leave, indeed, adds slightly more description regarding the 2007 Homestead Refinancing transaction set forth in the original Complaint.  *See* First Amended Complaint, ¶¶ 6 & 9. However, the First Amended Complaint also **adds wholly new acts or events**, separate from the 2007 Homestead Refinancing transaction, such as:  (a) a description of a January 7, **_2004_** refinancing of the Debtor's homestead wherein, this time, $68,000 of cash equity was extracted out and paid to the Debtor (*see* First Amended Complaint, ¶ 5); (b) an allegation that the Debtor redirected a

---

[3] Trial docket call was originally set for November 10, 2008, but the court continued the trial docket call in August 2008, pursuant to Cadle's agreed motion to continue same [Adv. Pro. doc. no. 8 & 10].  Cadle represented, as grounds necessitating a continuance, that Cadle's counsel would be out of town in November 2008 and that Cadle also needed more time for discovery.

$200,000 real estate commission to his nondebtor spouse in December *2005* (*see* First Amended Complaint, ¶ 5); (c) a reference to a July 2007 deposition of the Debtor that seems to imply that the Debtor was asked, but may not have produced, all responsive documents then sought (*see* First Amended Complaint, ¶ 7); (d) a reference to the Debtor making a $28,000 deposit into the nondebtor spouse's bank account, apparently postpetition (*see* First Amended Complaint, ¶ 8); (e) an assertion that the Debtor made four months' worth of house payments (totaling $18,764) four months before filing bankruptcy (*see* First Amended Complaint, ¶ 10); and (f) various misrepresentations or nondisclosures in which the Debtor allegedly engaged, pertaining to the 2007 Homestead Refinancing and the $200,000 real estate commission (*see* First Amended Complaint, ¶ 12). The causes of action in the proposed First Amended Complaint—Counts 1 through 5—are identical to those alleged in the original Complaint.[4]

12. The Debtor asserts that Cadle is, in fact, raising new causes of action and asserts that, to the extent the new facts go beyond what is alleged in the original Complaint, this should not be permitted.

---

[4] Cadle had already alleged in its original Complaint Sections 727(a)(2), (a)(3), (a)(4), or (a)(5) as grounds for objecting to discharge, when only the 2007 Homestead Refinancing transactions were described; thus, while adding extensive new facts, Cadle technically added no new causes of action (or, at least no new statutory grounds for denial of discharge) in the draft First Amended Complaint.

13. Cadle argues that it is simply elaborating on the original facts set forth in the Complaint and showing a pattern of conduct relating thereto, that further establishes its Section 727 causes of action. Cadle is emphatic that it has added no new causes of action.

14. Cadle also argues that it only learned of the newly elaborated facts at some undefined point during post-bar date discovery. The court notes that it granted a motion of Cadle to take a Rule 2004 examination of the Debtor's spouse (with production of documents from her) in April 2008 (by order dated May 1, 2008). Apparently, the spouse's examination took place May 22, 2008. *See* First Amended Complaint, ¶ 8. The Debtor argues that all of the information Cadle wants to add in the draft First Amended Complaint was discussed in the spouse's deposition, if not sooner.

### APPLICABLE LAW AND RULING

**A. Bankruptcy Rule 7015(a) Evinces a Bias in Favor of Granting Leave to Amend, but it is not Automatic.**

15. Rule 15(a) of the Federal Rules of Civil Procedure, which applies in adversary proceedings such as this one, by virtue of Rule 7015 of the Federal Rules of Bankruptcy Procedure, is the starting place for analyzing Cadle's Motion for Leave. It instructs that a party may amend its pleading (before trial, and after service of a responsive pleading), only with written consent from the opposing party or with leave of court, and the

7

"court should freely give leave when justice so requires."

16. Rule 15(a) obviously evinces "a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inc. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981). However, it should not be considered as "automatic." Trial courts have discretion to deny amendments, if there is a substantial reason to do so. *Southmark Corp. v. Shulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 314 (5th Cir. 1996); *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993); *Louisiana v. Litton Mortgage Co.,* 50 F.3d 1298, 1302-03 (5th Cir. 1995). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Southmark,* 88 F.3d at 314-315 (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) and *Wimm,* 3 F.3d at 139).

17. In the *Southmark* case, the Fifth Circuit affirmed a bankruptcy court's denial of plaintiff's motion for leave to amend its complaint. The complaint in *Southmark* involved a settlement agreement entered into shortly before the Southmark bankruptcy case, pursuant to which Southmark agreed, *inter alia*, to reimburse a group of dissatisfied, minority-interest shareholders for expenses they incurred in connection with a

proxy contest and related lawsuits. The plaintiff, the Reorganized Southmark, alleged that a $3.3 million escrow payment made to fund the settlement, prior to the settlement agreement's actual execution and implementation, constituted a preferential transfer, pursuant to Section 547 of the Bankruptcy Code. Almost one year after the original complaint was filed, Reorganized Southmark moved for leave to amend its complaint to: (a) amplify its theory of the preferential transfer, by articulating that certain former directors of Southmark were creditors for whose benefit the $3.3 million transfer was made; and (b) to allege an alternative theory that the $3.3 million payment was a fraudulent transfer, pursuant to Section 548 or other authority.[5]

18. The bankruptcy court denied leave to amend, citing the factors of undue delay by the plaintiff, and prejudice to the defendants.

19. Specifically, the transactions upon which the proposed amendments were based had been known to Reorganized Southmark since a time well-prior to the filing of the original complaint. Reorganized Southmark even had the benefit of an Examiner's Report that had analyzed causes of action belonging to the estate. The fact that the Southmark bankruptcy was large and complicated did not, in the bankruptcy court's view, justify the

---

[5] Southmark also sought leave to make three other amendments that were moot by the time of the Fifth Circuit appeal.

plaintiff's delay.

20. Moreover, the bankruptcy court found prejudice to certain defendants because they had stipulated, prior to the proposed amendments, to the Debtor's insolvency. While this was not a large concession on their part, in connection with a mere preference cause of action (since Section 547 creates a presumption of insolvency), the bankruptcy court considered it a significant concession in connection with a fraudulent transfer cause of action (since there is no presumption of insolvency in connection with fraudulent transfers).[6]

21. On appeal, Reorganized Southmark argued that, while there was delay, there was not **undue** delay implicated by the proposed amendments because, at the time the motion to amend was filed: (1) no trial date had been set, (2) the only party that had commenced discovery was Southmark, (3) one defendant had filed its answer only about two months earlier, following a nine month "hiatus" during which the parties discussed settlement, and (4) no dispositive motions had been filed by any party. Reorganized Southmark argued that its case was distinguishable from numerous other cases in which a denial of leave to amend a

---

[6] Note that, by the time that the *Southmark* appeal was heard by the Fifth Circuit, the defendants that the bankruptcy court had found would be prejudiced by the proposed amendments (*i.e.,* those that had stipulated concerning insolvency) had settled with the plaintiff. Thus, the issue of the possible prejudice to them was not discussed by the Fifth Circuit.

10

complaint has been affirmed, noting that those other cases involved attempts to amend closer to the eve of trial or after dispositive motions had been filed.

22. The Fifth Circuit disagreed with Reorganized Southmark and held that the bankruptcy court had not abused its discretion in denying leave to amend. The fact that many cases in which a denial of leave to amend a complaint has been affirmed involved proposed amendments closer to the eve of trial did not preclude the bankruptcy court in *Southmark* from properly exercising its discretion to deny leave to amend, under the particular facts in which a trial setting was not imminent. "Liberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time." *Southmark,* 88 F.3d at 315-316. In exercising its discretion to deny leave to amend a complaint, "a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Id*. at 316. Here, Southmark sought leave to add both a fact of which it had been aware since before it filed its original complaint, and a cause of action based on the identical, known facts that underlay its original complaint. Reorganized Southmark's motion for leave to amend was filed many months after the original complaint was filed. Moreover, Southmark had offered no reasonable explanation for its

delay in amending its complaint. In summary, the Fifth Circuit could not fault the bankruptcy court's discretionary determination that allowing Southmark to amend its complaint would not further the purposes of Rule 15, "but to the contrary would serve only to reward Southmark for its unreasonable delay." *Id.*

**B. There are Substantial Reasons to Deny Cadle's Motion for Leave.**

23. In the case at bar, the court believes there are substantial reasons to deny Cadle's Motion for Leave—namely, the undue delay of Cadle, unfair prejudice to the Debtor, and the futility of allowing the proposed amendments.

### Undue Delay by Cadle and Unfair Prejudice to the Debtor.

24. With regard to the factor of undue delay, Cadle is the holder of a 20-year-old agreed judgment against the Debtor, that it purchased sixteen years ago and has been attempting to collect upon at least ten years. Cadle has been actively engaged in post-judgment discovery against the Debtor prepetition (it is undisputed that Cadle deposed the Debtor in July 2007—some six months before the petition date). It is undisputed that Cadle attended the Section 341 meeting in this case at which the Debtor was questioned under oath. It is undisputed that Cadle received document production from the Debtor prepetition. It is undisputed that Cadle obtained one 60-day extension of its time to object to discharge in this case. It is undisputed that Cadle

12

moved to depose the Debtor's wife and to obtain document discovery from her in April 2008 and, indeed, took her deposition in May 2008.  It appears from the record that Cadle should have been able to articulate its proposed amendments to its Complaint many months ago.  Yet Cadle waited until just three and one-half months before this matter was set to go to trial to file a motion for leave to amend its Complaint (setting its motion for hearing just two months before trial).  No clear or reasonable explanation for Cadle's delay is given; Cadle simply urges that it is not really adding causes of action, but is, rather, amplifying its prior Complaint to show a pattern of problematic conduct of the Debtor (Cadle also urges, unconvincingly, that it did not know all of the facts underlying the proposed amendments until some undefined time post-bar date).

25.  The court believes Cadle has exhibited undue delay. Granting Cadle's Motion for Leave would improperly reward it for its inexplicable delay.

26.  Moreover, to permit Cadle to amend its Complaint at this very late date would unfairly prejudice the Debtor. Discovery has gone on for months and has now concluded, by terms of the governing Scheduling Order in this case.  Granting Cadle's Motion for Leave would prejudice the Debtor by delaying the trial.

27.  Cadle urges that granting the Motion for Leave would

not delay trial. However, this is most unlikely. If the Motion
for Leave were granted, the Debtor would be entitled to time to
file an Amended Answer. *See* Rule 15(a)(3). And the new
averments in both the Amended Complaint and the Amended Answer
would surely create the possibility that one or both parties
would desire additional discovery. One of the purposes for the
strict time deadlines in Bankruptcy Rules 4004(a) and 4007(c),
pertaining to objections to discharge and dischargeability, is to
promote expeditious and efficient administration of bankruptcy
cases by assuring parties that, within 60 days, they know whether
and which debts are subject to objection to discharge; these
rules place a heavy burden on creditors to protect their rights.
*See, e.g., Bank of Louisiana v. Bercier (In re Bercier),* 934 F.2d
689, 693 n.6 (5th Cir. 1991). To allow Cadle, almost one year
after the Debtor filed his case, to amend its Complaint to add
wholly new acts as grounds for denial of discharge, would seem to
subvert the policy behind Rule 4004(a).

### Futility of the Motion for Leave Because of the Time Constraints of Bankruptcy Rule 4004.

28. As earlier mentioned, in deciding whether to grant a
motion for leave to amend a complaint, a trial court may consider
such factors as the futility of a proposed amendment. *Southmark,*
88 F.3d 311 at 314-315 (*citing Foman v. Davis,* 371 U.S. 178, 182,
83 S. Ct. 227, 230 (1962) and *Wimm,* 3 F.3d at 139).

29. Here, the court finds that Cadle's proposed amendments

14

would, indeed, be an exercise in futility because of the unalterable time restrictions in Bankruptcy Rule 4004.

30. Specifically, as earlier alluded to, Cadle proposes, in the draft First Amended Complaint, to add **wholly new acts or events**, separate from the 2007 Homestead Refinancing transaction, such as: (a) a description of a January 7, **_2004_** refinancing of the Debtor's homestead (*see* First Amended Complaint, ¶ 5); (b) an allegation that the Debtor redirected a $200,000 real estate commission to his nondebtor spouse in December **_2005_** (*see* First Amended Complaint, ¶ 5); (c) a reference to a July 2007 deposition of the Debtor that seems to imply that the Debtor was asked, but may not have produced, all responsive documents then sought (*see* First Amended Complaint, ¶ 7); (d) a reference to the Debtor making a $28,000 deposit into the nondebtor spouse's bank account, apparently postpetition (*see* First Amended Complaint, ¶ 8); (e) an assertion that the Debtor made four months' worth of house payments (totaling $18,764) four months before filing bankruptcy (*see* First Amended Complaint, ¶ 10); and (f) various misrepresentations or nondisclosures in which the Debtor allegedly engaged, pertaining to the 2007 Homestead Refinancing and the $200,000 real estate commission (*see* First Amended Complaint, ¶ 12).

31. Cadle argues that it is simply elaborating on the original facts set forth in the Complaint and showing a pattern

of conduct relating thereto, that further establishes its Section
727 causes of action. The Debtor asserts that Cadle is, in fact,
raising new theories of liability, and the court agrees.

32. The significance of the proposed amendments involving
wholly new facts is found at Rule 15(c).

33. Rule 15(c) provides, in pertinent part, that an
amendment of a pleading **relates back** to the date of the original
pleading when "the amendment asserts a claim . . . that arose out
of the conduct, transaction, or occurrence set out—or attempted
to be set out—in the original pleading." Thus, there is only a
relation-back-in-time concept if the amendment involves a claim
that arose out of the **same conduct or transaction** addressed in
the original pleading. Here, this is not what Cadle attempts.
Cadle, despite the spin it puts on the proposed amendments, is
attempting to raise entirely new grounds for objecting to
discharge—grounds that involve conduct in 2004, 2005, and 2008
that was wholly separate from the 2007 Homestead Refinancing (the
latter of which was the only act complained of, in the original
Complaint).

34. The significance of the proposed amendments involving
entirely new acts is that, if the Motion for Leave were granted,
the amendments could **not** relate back to the time of the filing of
the original Complaint. Thus, the newly asserted grounds for
objecting to discharge would be untimely—well beyond the Rule

16

4004(a) deadline.  Bankruptcy Rule 4004(a), of course, allows a
party in interest "60 days after the first date set for the
meeting of creditors" to file a complaint objecting to the
debtor's discharge.  This period may be extended "for cause" on
motion "filed before the time has expired," according to
Bankruptcy Rule 4004(b).  Bankruptcy Rule 9006 permits no further
expansion of this deadline for such things as excusable neglect
or otherwise.  Rule 9006(b)(3) allows enlargement of "the time
for taking action" under Rule 4004(a) "only to the extent and
under the conditions stated in [that rule]," *i.e.,* only as
permitted in Rule 4004(b).

    35.  The issue of amending a complaint objecting to
discharge beyond the Bankruptcy Rule 4004 deadline was discussed
in a different procedural context in the recent United States
Supreme Court case of *Kontrick v. Ryan,* 540 U.S. 443 (2004).  The
primary discussion in *Kontrick* revolved around whether the time
constraints imposed by Bankruptcy Rule 4004 are jurisdictional or
merely procedural (the Supreme Court held that they are not
jurisdictional).[7]  The significance of the Supreme Court's

---

[7] "The time constraints applicable to objections to
discharge are contained in Bankruptcy Rules prescribed by this
Court for 'the practice and procedure in cases under title 11.'
28 U.S.C. § 2075.  *** '[I]t is axiomatic' that such rules 'do
not create or withdraw federal jurisdiction.' ***  As Bankruptcy
Rule 9030 states, the Bankruptcy Rules shall not be construed to
extend or limit the jurisdiction of the courts.'" *Kontrick,* 540
U.S. at 453 (citations omitted).

decision was that, where a defendant had **not** objected to an
amendment of a complaint objecting to discharge undertaken after
the Rule 4004 deadline, he was deemed to have forfeited his
affirmative defense of untimeliness after the trial court had
ruled on the merits of the complaint (*i.e.,* a time prescription
that is not jurisdictional **cannot** be raised at any stage of
litigation—such as on appeal).[8]

36. Despite the different procedural context of *Kontrick*,
the Court did allude to the problem presented when a plaintiff
attempts to amend a complaint objecting to discharge after the
Bankruptcy Rule 4004(a) deadline. The Court stated that it was
not presented with the issue of whether a court has equitable
discretion to allow an amendment raising new claims after the
Rule 4004 deadline, but the Supreme Court's discussion suggests
the unlikelihood of courts having such equitable discretion:

> This case, however, involves no issue of equitable
> tolling or any other equity-based exception.
> Neither at the time creditor Ryan filed the
> amended complaint containing the family-account
> claim nor anytime thereafter did he assert
> circumstances—equitable or otherwise—qualifying
> him for a time extension. *** We can assume,
> *arguendo,* that had Kontrick timely asserted the
> untimeliness of Ryan's amended complaint, Kontrick
> would have prevailed in the litigation. . . .

---

[8] Time bars generally must be raised in an answer or
responsive pleading. *See Kontrick,* 540 U.S. at 458; Fed. R. Civ.
P. 8(c)(1) (applicable in adversary proceedings pursuant to
Bankruptcy Rule 7008) and Fed. R. Civ. P. 12(b) (applicable in
adversary proceedings pursuant to Bankruptcy Rule 7012(b)).

> *See, e.g., [Carlisle v. United States,* 517 U.S.
> 416, 419-433 (1996) (upholding timely challenge to
> one-day-late filing under Fed. Rule Crim. Proc.
> 29(c)); *Taylor v. Freeland & Kronz,* 503 U.S. 638,
> 642-646 (1992) (similar ruling regarding Fed. Rule
> Bkrtcy. Proc. 4003(b)); *United States v. Robinson,*
> 361 U.S. 220, 222-230 (1960) (similar ruling
> regarding Fed. Rule Crim. Proc. 45(b))]. Here,
> however, the sole question is whether Kontrick
> forfeited his right to assert the untimeliness of
> Ryan's amended complaint by failing to raise the
> issue until after that complaint was adjudicated
> on the merits.

*Kontrick,* 540 U.S. at 457-458.

37.   Here, Cadle has not articulated a request that the
court grant Cadle some sort of equitable extension of the Rule
4004 deadline, but if it is impliedly requesting this, the answer
is "no."  The court holds that Bankruptcy Rule 4004 is a firm
deadline, and the court has no discretion to expand it, absent
some extenuating circumstances such as a stay pursuant to Rule
1014(b)[9] or when a deadline passes during an interim dismissal,[10]

---

[9]   *See Coston v. Bank of Malvern*, 987 F.2d 1096 (5th Cir.
1992), in which Fifth Circuit held that the deadlines under Rules
4004 and 4007 where essentially "on hold" during the period in
which a second-filed bankruptcy case (voluntarily filed by
debtors) had been stayed, pursuant to Rule 1014(b), pending a
ruling on proper venue by the bankruptcy court in the first-filed
bankruptcy case (which had been filed involuntarily against the
same debtors).

[10]   *See State Bank & Trust, N.A. v. Dunlap (In re Dunlap)*,
217 F.3d 311 (5th Cir. 2000) (in a case in which the debtor's
case was dismissed for a period of approximately three months
during which time the deadline to file discharge and
dischargability actions "passed," the Fifth Circuit relied upon
*Coston* for the proposition that the deadline in Rule 4007 for
filing dischargeability actions should be recalculated where the
bar date passed while the case was dismissed).  The Fifth
Circuit, first, acknowledged that Rules 4007(c) and 9006(b)(3)

if the request is made after the deadline has expired. *See Neeley v. Murchison,* 815 F.2d 345, 346-347 (5th Cir. 1987) (in case construing Bankruptcy Rule 4007 in connection with an untimely Section 523 dischargeability action, and where there was a problem with the notice of the discharge/dischargeability deadline sent out by the bankruptcy clerk, Fifth Circuit held that clerk's failure to provide notice of dischargeability bar date did not suspend running of fixed limitation period for filing of dischargeability complaints; "Rule 4007 sets a fixed limitation period of 60 days and further constrains the granting of extensions. The bankruptcy court can extend the time only if the creditor has filed a motion before the 60-day period expires, and then only 'for cause.' Rule 9006(b)(3) explicitly excepts Rule 4007(c) from the 'excusable neglect' standard").

38. In summary, granting the Motion for Leave would be an exercise in futility here. Why? Because the wholly new facts set forth in Cadle's draft First Amended Complaint—hardly a mere amplification or clarification of the sparse facts set out in the original Complaint—essentially urge new grounds for denial of the Debtor's discharge and would not "relate back" to the time of filing the original Complaint, pursuant to Rule 15(c). Since there would be no relation back, the new facts/grounds would have

---

must be read in conjunction and, together, form a "strict time limitation [] upon creditors who wish to object to a debt's dischargeability" but believed the intervening dismissal created an extenuating circumstance.

20

to be considered time-barred, pursuant to Rule 4004.  Since the

Debtor here (unlike the debtor in *Kontrick*) has been vigilant and

not just objected to the Motion for Leave but specifically

objected to any new post-bar date objections to discharge being

lodged (as violative of Rule 4004(a) and (b)), this court must

deny the Motion for Leave and not allow an untimely, expanded

objection to discharge to go forward.[11]

---

[11] Former Bankruptcy Judge Robert McGuire addressed similar
issues to this in *Chicago Title Ins. Co. v. Baggett (In re
Baggett),* 223 B.R. 100 (Bankr. N.D. Tex. 1997).  *Baggett* involved
a situation in which a plaintiff who had objected to the debtor's
discharge, for failure to obey court orders, sought to amend its
complaint some six months later (and after the Bankruptcy Rule
4004 bar date) to add counts that the debtor transferred property
within a year of filing bankruptcy with intent to hinder
creditors and also to add a count that the debtor concealed
financial records.  The plaintiff argued that it had only
recently uncovered certain relevant facts due to the debtor's
unsatisfactory responses to discovery requests.  Judge McGuire
noted that Bankruptcy Rule 4004 constrains somewhat a bankruptcy
court's ability to freely grant leave to amend a Section 727
complaint.  *Id.* at 101.  Surveying certain of the cases that have
dealt with proposed amendments to Section 727 complaints after
the Rule 4004 deadline, he noted that certain courts simply would
not grant a motion for leave to amend, in light of the Bankruptcy
Rule 4004 deadline; certain courts had granted leave to amend
where the proposed amendments involved were perceived to relate
back or amplify the original complaint without adding new counts;
and certain courts had allowed late amendments because the
grounds for objecting to discharge were not discoverable until
after the Rule 4004 bar date.  *Id.* at 101-102 (and cases cited
therein).  In *Baggett*, Judge McGuire ultimately allowed certain
amendments (dealing with alleged concealment of records) and did
not allow certain others (dealing with transfers of
property)—finding that the amendments dealing with concealed
records were both an "amplification" of the original complaint
and that the debtor had admitted not producing certain documents
because he could not find them.

39. To be clear, this court holds it has no authority to grant an equitable extension here for Cadle, since the deadlines set forth in Rules 4007 and 9006(b)(3) are resolute, absent extenuating circumstances similar to those described above in *Coston* and *Dunlap*. Even if the court did have the equitable discretion to extend the discharge objection deadline for Cadle, the facts certainly do not support exercising it in this situation, where Cadle has been involved in post-judgment discovery against the Debtor for several years and has had ample time to develop its case.

<u>CONCLUSION</u>

Based on the foregoing, the Motion for Leave is **DENIED**.

**IT IS SO ORDERED**.

***END OF MEMORANDUM OPINION AND ORDER***